**STATE of Alaska, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**Warren CROSBY and Kathryn Crosby, Appellees.**

No. 584.

Supreme Court of Alaska.

Feb. 3, 1966.

Warren C. Clover, Atty. Gen., Juneau, Mary Frank LaFollette and Donald E. Strouse, Asst. Attys. Gen., Anchorage, for appellant.

M. Ashley Dickerson, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

The appellees own real property which their grantor obtained by patent from the United States. The patent provided that the grant of the property was subject to

> [T]he reservation of a right-of-way for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under authority of the United States or by any State created out of the Territory of Alaska, in accordance with the act of July 24, 1947 (61 Stat., 418, 48 U.S.C. sec. 321d).

By virtue of the foregoing reservation, the state claimed a right-of-way for highway purposes across a portion of appellees' land. The trial court held that such reservation in the patent was invalid and of no effect, and at the instance of appellees, entered judgment for appellees and enjoined the state from entering on or appropriating the portion of appellees' land in question. The state has appealed.

The state's first point is that the United States was an indispensable party to this action, and since it was not made a party the action ought to have been dismissed.

Civil Rule 19, which was adopted from Rule 19, Federal Rules of Civil Procedure, deals with the compulsory joinder of parties.[1] It recognizes the classes of indispensable, necessary and proper parties that were first developed in the equity courts.[2]

An indispensable party is one whose interest in the controversy before the court is such that the court cannot render an equitable judgment without having jurisdiction over such party.[3] The determination of indispensability or lack of it involves a discretionary balancing of interests.[4] On the one hand, consideration must be given to the possibility of rendering a judgment that will have an adverse factual effect on the interests of persons not before the court, and to the danger of inconsistent decisions, the desire to avoid a multiplicity of actions, and a reluctance to enter a judgment that will not end the litigation.[5] On the other hand, considera-

---

1. Civ.R. 19 provides:

(a) *Necessary Joinder.* Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.

(b) *Effect of Failure to Join.* When persons who are not indispensable, but who ought to be made parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action. If jurisdiction over them cannot be acquired except by their consent or voluntary appearance, the court in its discretion may proceed in the action without making them parties, but the judgment rendered therein does not affect the rights or liabilities of absent persons.

(c) *Same—Names of Omitted Persons and Reasons for Non-Joinder to Be Pleaded.* In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted.

2. 2 Barron & Holtzoff, Federal Practice and Procedure § 511, at 85 (rules ed. 1961).

3. Commercial State Bank of Roseville v. Gidney, 174 F.Supp. 770, 780–781 (D.D.C. 1959), aff'd, 108 U.S.App.D.C. 37, 278 F. 2d 871, 872 (1960).

4. 2 Barron & Holtzoff, Federal Practice and Procedure § 512 (Supp.1964).

5. Ward v. Louisiana Wild Life and Fisheries Comm'n, 224 F.Supp. 252, 256 (E.D. La.1963); Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.L.Rev. 327, at 338 (1957).

tion must be given to the desirability of having some adjudication if at all possible rather than none, leaving the parties before the court without a remedy because of an "ideal desire to have all interested persons before the court." [6] Courts exist for the determination of disputes, and they have an obligation in particular litigation to make meaningful determinations if at all possible.[7]

The fundamental issue here is whether the state may take appellees' land for highway purposes without payment of just compensation. It may if the reservation in the patent for a highway right-of-way is valid; it may not if the reservation is invalid. If that issue may not be decided without joining the United States as a party to the action, then it is unlikely that the issue could be decided at all since the United States could not be made a party without its consent. This would mean—assuming that the reservation is invalid—that appellees would be deprived of their right to be awarded just compensation for the taking of or damage to their property for a public use.[8] They would be unable to challenge the asserted right of the state to utilize the reservation for highway purposes contained in the patent to the property. To hold that the United States is an indispensable party in this suit would be to interpret and apply procedural rules in such a way that appellees could not avail themselves of a constitutional safeguard against the taking of their property without the awarding of just compensation.

■ It is not apparent that the United States has an interest in the matter in controversy which would be adversely affected by the judgment entered by the court below. It is the state, and not the United States, which is constructing the highway and seeking to utilize an asserted right-of-way across appellees' land. Conceivably, the United States could have an interest in effectuating the reservation of a right-of-way in the patent to appellees' land for the benefit of the state, since the United States was the grantor of the land and inserted the right-of-way wording in the patent. This may possibly lead to future litigation by the United States in seeking a judicial declaration that the reservation of the right-of-way is valid and subsisting. But as undesirable as it may be to have the possibility of another suit involving the same issue, it is less desirable to leave the appellees without any remedy at all.[9] We hold that the United States is not an indispensable party to this action.

Appellant's next point is that the reservation for highway purposes was properly included in the patent by reason of the provisions of the Act of July 24, 1947, 61 Stat. 418, 48 U.S.C.A. § 321d (1952). That act provides:

> In all patents for lands hereafter taken up, entered, or located in the Territory of Alaska, and in all deeds by the United States hereafter conveying any lands to which it may have reacquired title in said Territory not included within the limits of any organized municipality, there shall be expressed that there is reserved, from the lands described in said patent or deed, a right-of-way thereon for roads, roadways,

---

6. 3 Moore, Federal Practice § 19.07, at 2154–55 (2d ed. 1964); Gauss v. Kirk, 91 U.S.App.D.C. 80, 198 F.2d 83, 85, 33 A.L.R.2d 1085 (1952); Reed, Compulsory Joinder of Parties in Civil Actions, supra note 5.

7. Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.L.Rev. 327, 337 (1957).

8. Article I, § 18 of the Alaska Constitution provides:
   *Eminent Domain.* Private property

shall not be taken or damaged for public use without just compensation.

9. Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 70–71, 57 S.Ct. 51, 81 L.Ed. 42, 45–46 (1936); Zwack v. Kraus Bros. & Co., 237 F.2d 255, 259 (2d Cir. 1956); Black River Regulating Dist. v. Adirondack League Club, 282 App.Div. 161, 121 N.Y.S.2d 893, 904 (1953), rev'd on other grounds, 307 N.Y. 475, 121 N.E.2d 428 (1954), appeal dismissed, 351 U.S. 922, 76 S.Ct. 780, 100 L.Ed. 1453 (1956).

highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under the authority of the United States or of any State created out of the Terrritory of Alaska.

The land involved in this action was acquired under the federal Small Tract Act of June 1, 1938 [10] which was made applicable to Alaska in 1945.[11] That statute provides in part:

The Secretary of the Interior, in his discretion, is authorized to sell or lease to any person or organization * * * a tract of not exceeding five acres * * * under such rules and regulations as he may prescribe, * * *.

The trial court held that public lands that are leased or sold under the Small Tract Act are not lands that have been "taken up, entered, or located" within the meaning of the act of July 24, 1947, and therefore that the reservation for highway purposes under the 1947 act was not applicable to appellees' land and was improperly inserted in the patent.

The purpose of the act of July 24, 1947, was stated by the House Committee on Public Lands as follows:

This bill is designed to facilitate the work of the Alaska Road Commission. As the population of Alaska increases and the Territory develops, the road commission will find it increasingly difficult to obtain desirable highway lands unless legislative provision is made for rights-of-way.

The Committee on Public Lands unanimously agree that passage of this legislation will help to eliminate unnecessary negotiations and litigations in obtaining proper rights-of-way throughout Alaska.[12]

From such statement of purpose it is apparent that under the various land laws applicable in Alaska whereby persons could acquire portions of the public domain, an executive agency or officer of the government did not have the discretionary authority to reserve rights-of-way for highway purposes. If such authority had existed, then the legislation would have been unnecessary. It is logical to conclude, then, that the 1947 Act, in speaking of lands "taken up, entered, or located", had reference only to those public land laws where discretionary authority on the part of a government officer or agency to impose reservations for rights-of-way was absent, and was not intended to apply to those laws where such authority existed.

Under the Small Tract Act the Secretary of the Interior has the discretionary authority, first of all, to sell or lease small tracts and secondly, to do so under "such rules and regulations as he may prescribe." That such grant of authority was considered broad enough to authorize the Secretary to impose reservations for rights-of-way is apparent from the fact that in 1953 the Secretary made effective the following regulation:

Unless otherwise provided in the classification order, the leased land will be subject to a right-of-way of not to exceed 33 feet in width along the boundaries of the tract for street and road purposes and for public utilities.[13]

This was the only reservation for a right-of-way that the Secretary, by regulation, prescribed as to small tracts.[14] He did not by rule or regulation provide that land leased or sold under the Small Tract Act would be subject to the general reservation of a highway right-of-way as prescribed by the act of July 24, 1947.

10. Act of June 1, 1938, 52 Stat. 609, 43 U.S.C.A. § 682a (1964).

11. Act of July 14, 1945, 59 Stat. 467.

12. 1947 U.S.Code Cong.Serv. 1353.

13. 15 Fed.Reg. 6222 (1950) (codified as 43 C.F.R. § 257.16(c) (1954), superseded Jan. 15, 1955).

14. Such a reservation was included in the patent to appellees' property in addition to the reservation under the act of July 24, 1947.

■ In the light of the legislative purpose of the 1947 Act and the discretionary authority of the Secretary of the Interior under the Small Tract Act to sell or lease lands under such rules and regulations as he may prescribe, we are of the opinion that the 1947 Act has no application to public lands acquired under the Small Tract Act, and therefore, that the reservation for highway purposes included in the patent to appellees' property under the 1947 Act was ineffective.

The state's third point is that the court erred in dismissing its counterclaim against appellees, which stated that

[S]hould the provisions of the act of July 24, 1947, 48 USCA 321d, be determined not to apply to these premises, then, in such event, the entry of plaintiff pursuant thereto was an act of inverse condemnation.

A pre-trial order reflects that the state and appellees had entered into a stipulation which provided in part as follows:

2. That on October 23, 1962 the State, through its Department of Highways, appropriated, without instituting an eminent domain proceedings or without filing a declaration of taking, a strip of land 42 feet in width along the south side of the 33 foot right-of-way along the northerly boundary of the tract in question. The area taken then is 42 feet by 297 feet and contains ————.

3. That the total area of the parcel from which the property was appropriated is 2.5 acres.

4. The interest taken is a perpetual easement and rights-of-way for all road and highway purposes.

5. The time of just compensation will be as of the date of appropriate taking, October 23, 1962.

The above stipulations and agreements are made only for the purpose of trying the issue of just compensation and are not made for any other purpose and are received subject to the qualification that such stipulations or agreements will not prejudice any of the parties' claims or contentions.

Subsequently, the court allowed the appellees to file a fourth amended complaint: which asked that the state be enjoined from, appropriating appellees' property and which. also asked for damages for trespass. The court permitted appellees to proceed on the trespass theory, rather than limiting the action to one of determining just compensation for lands taken or damaged for public use by the state under its power of eminent domain. An injunction was issued against: the state and its counterclaim was dismissed. Trial of appellees' claim of trespass was deferred until a later time.[15]

■ When the state appropriated appellees' land for the constructon of a highway, it was exercising the power of eminent domain. It is true that the state did not. utilize condemnation proceedings prescribed by law and by rule.[16] That was because the state mistakenly, but in good faith believed that it could rely upon the reservation of a right-of-way for highway purposes. contained in the patent to appellees' land. But neither the failure to institute a condemnation action nor appellees' assertion of a claim based on the theory of trespass changed the essential nature of the state's action in appropriating appellees' property. Such action was still the exercise of the power of eminent domain because private property was being taken by the state for a public use. Since under Art. I, § 18 of the Alaska Constitution private property may not be taken or damaged for public use without just compensation, the fundamental basis of appellees' claim for damages is the constitutional provision mentioned, and the acts of the state in appropriating appellees' land are in the nature of inverse condemna-

15. The trial court directed the entry of final judgments as to the injunction and the dismissal of the state's counterclaim, stating in accordance with Civ.R. 54(b) that there was no just reason for delay.

16. AS 09.55.240–09.55.460; Civ.R. 72.

tion.[17] This appears to have been recognized by appellees when they entered into a stipulation with the state to the effect that on a certain date the state had appropriated, without institution of condemnation proceedings, a portion of appellees' land, and that "the time of just compensation will be as of the date of appropriate taking, October 23, 1962." The trial court was in error in failing to recognize the essential nature of this action as one in condemnation and to proceed accordingly.

The state's final point is that the court erred in granting a permanent injunction prohibiting the state from entering upon or appropriating a certain portion of appellees' land.

In speaking of the injunction the trial court said:

> I didn't intend this injunction to preclude them from any action to otherwise acquire the land, other than to go on the land and continue to take it without some sort of legal process.

█ This statement might be construed as meaning that the state must first institute condemnation proceedings in accordance with statute and rule before it may enter upon and utilize the property that it has already appropriated. We believe that such a requirement is unrealistic. The property has already been taken. It would serve no useful purpose to insist now that the state must initiate a condemnation action and take the initial steps required by law and rule as a condition to the exercise of its power of eminent domain. What is at issue here is the matter of awarding appellees just compensation. Such compensation may be determined in this proceeding, utilizing so far as practicable the statutory requirements and procedural steps relating to the condemnation action, as well as it could be determined in a separate condemnation action to be instituted by the state. Since the evident purpose of the injunction was to require the state, if it chose to utilize appellees' property, to institute a separate condemnation action to acquire such property, and since we have held that such action is unnecessary, the injunction was not appropriate and should be dissolved.

The judgment is reversed and the case is remanded to the superior court for further proceedings consistent with the views expressed in this opinion.

RABINOWITZ, Justice (dissenting in part).

I disagree with the majority's conclusion that the reservation for highways provided for by 48 U.S.C.A. § 321d has no applicability to the patent in issue. In my opinion neither the legislative history of the 1947 act nor construction of the language "taken up, entered, or located" supports the conclusion that the 1947 act is inapplicable to sales of land under the Federal Small Tract Act of June 1, 1938.

The patent which was issued on December 3, 1953, to appellees' predecessor in interest contained four reservations relevant to this appeal. The pertinent portions of the patent disclose that it was issued subject to the following reservations:

> (2) the reservation of a right-of-way for ditches or canals constructed by the authority of the United States, in accordance with the act of August 30, 1890 (26 Stat., 391, 43 U.S.C. sec. 945), and (3) the reservation of a right-of-way for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under authority of the United States or by any State created out of the Territory of Alaska, in accordance with the act of July 24, 1947 (61 Stat. 418, 48 U.S.C. sec. 321d). There is also reserved to the United States a right-of-way for the construction of railroads, telegraph and telephone lines, in accordance with section 1 of the act of March 12, 1914 (38 Stat., 305, 48 U.S.C. sec. 305); * * *

17. Myers v. United States, 323 F.2d 580, 583 (9th Cir. 1963)

In addition to the foregoing reservations, which were part of the printed portion of the patent, the patent also contained the following typed portion:

This patent is subject to a right of way not exceeding 33 feet in width, for roadway and public utilities purposes, to be located along the north and east boundaries of said land.[1]

Apparently the question of whether the 1947 act's reservation for highways applies to patents issued pursuant to the Small Tract Act is one of first impression.[2]

The 1947 act (48 U.S.C.A. § 321d (1959)) provided in part:

In all patents for *lands hereafter taken up, entered, or located* in the Territory of Alaska * * * there shall be expressed that there is reserved, from the lands described in said patent or deed, a right-of-way thereon for roads, roadways, highways * * * and appurtenant structures constructed or to be constructed by or under the authority of the United States or of any State created out of the Territory of Alaska. (Emphasis supplied.)

Appellant contends that the trial court's conclusion that lands leased or sold under the Small Tract Act[3] are not lands "taken up, entered, or located" under the 1947 act and therefore are not subject to the 1947 act's reservation for highways is erroneous. I am of the opinion that appellant's view has merit.

In urging that the 1947 act is applicable to lands sold or leased under the Small Tract Act, appellant makes several persuasive points. Initially, appellant contends that there is no difference between the applicability of the 1947 act to Small Tract Act lands which have been leased or sold and the applicability of the 1890 act[4] (reservation of a right-of-way for ditches or canals), and the 1914 act[5] (reservation of a right-of-way for construction of railroads, telegraph and telephone lines) to these same lands.[6] Appellant then cites authorities which have broadly construed the words "taken up" in the 1890 act and urges that this court should adopt these authorities and render a broad construction to the terms

1. As the majority opinion points out this reservation was inserted under the discretionary authority vested by the Small Tract Act in the Secretary of Interior to sell or lease small tracts under such "rules and regulations as he may prescribe."

Under this rule making authority, the Secretary of Interior promulgated the following regulation:

Unless otherwise provided in the classification order, the leased land will be subject to a right-of-way of not to exceed 33 feet in width along the boundaries of the tract for street and road purposes and for public utilities.

2. Note: The act of July 24, 1947, 61 Stat. 418, 48 U.S.C. § 321d (1959), was repealed (effective July 1, 1959) by Pub. L. 86–70, § 21(d) (7), 73 Stat. 146.

I am of the opinion that the trial court was correct in concluding that the repealer of the 1947 act was not intended to have retroactive effect.

3. Act of June 1, 1938, 52 Stat. 609, 43 U.S.C.A. § 682(a) (1964), which was made applicable to Alaska by the act of July 14, 1945, 59 Stat. 467.

4. The act of August 30, 1890, 26 Stat. 391, 43 U.S.C. § 945 (1959), provides:

In all patents for lands *taken up* after August 30, 1890, under any of the land laws of the United States * * * it shall be expressed that there is reserved from the lands in said patent described a right of way thereon for ditches or canals * * *. (Emphasis supplied.)

5. The act of March 12, 1914, 38 Stat. 305, 48 U.S.C. § 305 (1952), provides:

In all patents for lands *taken up, entered, or located* in Alaska after March 12, 1914, there shall be expressed that there is reserved to the United States a right of way for the construction of railroads, telegraph and telephone lines * * *. (Emphasis supplied.)

Note: As shown in the text, reservations under both the 1890 act and the 1914 act were included in the subject patent.

6. Appellant additionally points out that if the 1947 act's reservation is held inapplicable to the subject patent then the same result is reached as to the reservations contained in the 1890 and 1914 acts.

"taken up, entered, or located" as used in the 1947 act.[7]

I am of the view, upon consideration of the authorities cited by appellant, that a broad construction of the terms "taken up, entered, or located" as used in the 1947 act, is appropriate here. A broad construction leads to the conclusion that lands sold or leased pursuant to the Small Tract Act of June 1, 1938, were subject to the reservation for highways contained in the 1947 act. Such a construction in turn results in the conclusion that in the case at bar appellant had the right to use this reserved right-of-way in addition to the thirty-three foot right-of-way reserved along the northerly and easterly boundaries of appellees' land.[8]

I think it is appropriate to point out that in making the foregoing argument to this court, appellant, to a great extent, relies upon the *Ironshields*[9] decision for the first time.[10] It is also pertinent to note that appellant additionally relies upon and cites an unpublished "Memorandum of Opinion of the Office of the Solicitor, Department of the Interior, dated October 9, 1959."[11] This Memorandum Opinion also was not brought to the attention of the trial court.[12]

I concur in all other aspects of the majority's opinion.

7. Appellant relies on the following authorities (interpreting the 1890 act) in support of the broad construction argument it has advanced in regard to the 1947 act. United States v. 5.61 Acres of Land, 148 F.Supp. 467 (D.Cal.1957); United States v. Van Horn, 197 F. 611, 616 (D.Colo. 1912); United States ex rel. Southern Pac. R. R. v. Lane, 46 L.D. 407 (1917); Clement v. Ironshields, 40 L.D. 28 (1911); Interior Dep't. Instructions, 36 L.D. 482 (1908); Cosby v. Danziger, 38 Cal.App. 204, 175 P. 809, 810 (1918); Minidoka & S. W. Ry. v. Weymouth, 19 Idaho 234, 113 P. 455, 458–459 (1911); Green v. Wilhite, 14 Idaho 238, 93 P. 971, 973 (1908).

8. Supra note 1.

9. Supra note 7. In the Ironshields case, the issue was whether a reservation under the 1890 act for "ditches and canals" was includable in the subject patent pertaining to Sioux Indian Reservation lands sold pursuant to the act of March 2, 1889, 25 Stat. 888. The decision read in part:

It will be noted that the reservation was to be inserted 'in all patents for lands hereinafter taken up under any of the land laws of the United States'. * * * *If the actual disposition occurred after the passage of the Act, the land was undoubtedly 'taken up' within the meaning of those words as used in the Act of 1890, and this would be so whether the disposition occurred through allotment, sale,* *homestead, or other manner of disposition.* (Emphasis supplied.)

10. In its brief appellant states:
The case was, apparently unknown to all counsel in the proceedings in the Superior Court herein, and was thus not called to the attention of the Court.

11. As to the Memorandum Opinion, appellant asserts that it
held that patents issued pursuant to the provisions of the Small Tract Act (during the effective period of the 1947 Act) must contain the Reservation of the 1947 Act.

12. The Memorandum Opinion of the Office of the Solicitor reads in part as follows:
It is apparent that there could be an overlapping of rights-of-way over a tract of land as where a right-of-way generally provided for under the act of 1947, supra, and specifically referred to in reservation designating a certain width, could intersect or cross an access boundary road reserved under authority of 43 CFR 257.17(b).
Each authority has a separate and distinct application and should be included to authorize separate reservations in the Final Certificate and patent, as well as the Classification Order. Note: Under the authority of Udall v. Tallman, 380 U.S., 185 S.Ct. 792, 13 L. Ed.2d 616 (1965), appellant further argues that deference must be given to the Department of Interior's construction of the 1947 act.