Thomas R. WICKWIRE, Appellant,

v.

CITY AND BOROUGH OF JUNEAU,
Appellee.

CITY AND BOROUGH OF JUNEAU,
Cross-Appellant,

v.

Thomas R. WICKWIRE, Cross-Appellee.

Nos. 2760 and 2772.

Supreme Court of Alaska.

Dec. 6, 1976.

Thomas R. Wickwire, Fairbanks, pro se.

Paul M. Hoffman of Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee and cross-appellant.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

ERWIN, Justice.

In November, 1974, appellant Thomas R. Wickwire filed a complaint alleging that in July, 1973, the City and Borough of Juneau (hereinafter the City) had trespassed on his property while constructing a sewer. On July 16, 1975, the City filed a motion for summary judgment. The City argued that Wickwire's execution of a sewer easement in exchange for $100 made the case moot.

The sewer line was designed to run in the Dredge Lake Road and River Place rights-of-way. The line was staked in the designed location in 1972 by City survey

crews. In early 1973, the project engineer in charge of the sewer installation moved the line to avoid excavating near a high bank and to avoid unnecessarily cutting trees. The move was made necessary because the then-traveled roadway of River Place was outside the right-of-way. The move put the sewer in the traveled roadway, but also on appellant's property.

The City did not learn of the mistake until December, 1973. At that time a survey crew went out to verify that the sewer was located partially off the right-of-way. When the snow cleared in April, a better survey was performed and the City prepared an easement agreement for the record owners, Mr. and Mrs. Sibels. The City then learned that appellant Wickwire had purchased the property in June, 1972; his deed was not recorded until July, 1974. On April 18, 1974, Arthur Morrison, Public Works Director for the City, wrote to Wickwire to explain the error and to request that he sign a maintenance easement deed.

Wickwire did sign a sewer easement on August 1, 1974. A letter sent to the City along with the signed easement attempted to reserve Wickwire's claim for damages for the City's July, 1973, trespass. Wickwire accepted $100 in consideration for the easement.

The sewer line crosses the north boundary of Wickwire's property. It is never more than ten feet within his property line, and it is at all points within the twenty-foot front yard setback required for lots in that area. Wickwire's lot is in its natural state; no improvements had been made prior to the laying of the sewer line.

The trial court granted the City's motion for summary judgment. The court construed the easement deed to be a retroactive grant of the right to enter Wickwire's property and construct the sewer. We reverse this decision.

▪ Although appellant asserted a claim in trespass, the trial court found the claim to be one of inverse condemnation. Relying on *State Department of Highways v. Crosby*,[1] we affirm that decision. The landowner's only remedy in a situation such as the one presented is an inverse condemnation action[2] for just compensation for the value of the easement on the date of taking;[3] here when the sewer construction began.[4] An independent action based on the antecedent trespass is not permitted because that trespass, if nonnegligent, "necessarily results from the imposition of the easement;" therefore, the claim for damages from the trespass is "properly . . . considered an element of the property owner's damage due to the condemnation."[5]

1. 410 P.2d 724, 728–729 (Alaska 1966).

2. *State Department of Highways v. Crosby*, 410 P.2d at 728. *See also City of Anchorage v. Scavenius*, 539 P.2d 1169, 1177–1178 (Alaska 1975), noting that damages for negligent construction or maintenance may not be recovered in a condemnation proceeding. In such a situation the owner must bring a negligence action in tort against the condemnor for the additional injury.

3. *See City of Anchorage v. Nesbett*, 530 P.2d 1324, 1335 (Alaska 1975); 3 Nichols, Law of Eminent Domain § 8.5[1], at 32–33 (1975).

4. AS 09.55.280 provides:
In all cases where land is required for public use, . . . the public entity

. . . having the authority to condemn . . . may enter upon the land and make examination, surveys, and maps and locate boundaries . . . . The entry shall constitute no cause of action in favor of the owners of the land except for injuries resulting from negligence, wantonness, or malice.

Therefore, a claim for just compensation for the value of the easement herein on the date of taking cannot be measured as of the date the City came onto the property for survey purposes. Rather it must be measured from the time construction of the sewer began in July, 1973.

5. *City of Anchorage v. Scavenius*, 539 P.2d 1169, 1177 (Alaska 1975).

■ The City correctly points out that the sewer easement follows the form provided in AS 34.15.040 [6] for a statutory quitclaim deed. However, the right to recover damages for condemnation is not an interest in real property which passes to the grantee under a quitclaim deed.[7] That right remains with the owner of the property at the time of the taking.[8]

■■ The sewer easement granted herein is dated August 1, 1974. It became effective on the date of delivery.[9] By its terms,[10] the easement is prospective. The rights granted by it did not exist in the City until the date of its signing, August 1, 1974. It was error for the Superior Court to conclude that the Sewer Easement embraced all damages arising from the City's acts, since the complaint alleged the commission of acts by the City on appellant's property prior to August 1, 1974.

■ Appellant has been compensated in the sum of $100 for permanent damage to the property. His execution of the quitclaim deed bars any claim for damages after the date of its execution, August 1,

---

6. AS 34.15.040 provides:
   (a) A quitclaim deed may be substantially in the following form:
   "The grantor (here insert the name or names and place of residence), for and in consideration of (here insert consideration) conveys and quitclaims to (here insert grantee's name or names) all interest which I (we) have, if any, in the following described real estate (here insert description), located in the State of Alaska.
   "Dated this ...... day of ........, 19..."
   (b) A deed substantially in the form set out in (a) of this section, when otherwise duly executed, is considered a sufficient conveyance, release and quitclaim to the grantee, his heirs and assigns, in fee of all the existing legal and equitable rights of the grantor in the premises described in the deed.

7. In *McDaniels v. Dickey*, 219 Cal. 89, 25 P.2d 404, 405 (1933), the California Supreme Court said:

> [T]he right to compensation [for condemnation] is a personal one which does not run with the land, and does not pass to a vendee of the land after the right accrues, in the absence of an express agreement to that effect.

*See also* 2 Nichols, Law of Eminent Domain § 5.21, at 48–50 (1975); *Gillam v. City of Centralia*, 14 Wash.2d 523, 128 P.2d 661, 664 (1942).

Although a "quitclaim deed" was used for conveyance of a vessel in *Blumenstein v. Phillips Insurance Center, Inc.*, 490 P.2d 1213 (Alaska 1971), the court there was not concerned with whether the conveyance was indeed a "quitclaim deed." The nature and effect of a quitclaim deed were not discussed. However, we have recently acknowledged that a person must have an interest in real property to use a quitclaim deed. *See Willis v.*

*City of Valdez*, 546 P.2d 570, 575 (Alaska 1976), where the issue was "at what point in the pre-patent chain of procedures does a person have a sufficient interest in a particular tract of land to convey that land by quitclaim deed?"

The City relies on *Amick v. Metropolitan Mortgage & Securities Co.*, 453 P.2d 412 (Alaska 1969), and *Lonas v. Metropolitan Mortgage and Securities Co.*, 432 P.2d 603 (Alaska 1967). To the extent that they are inconsistent with the decision herein, they are deemed overruled.

8. 3 Nichols, Law of Eminent Domain § 8.5, at 27 (1975); *Rednor & Kline, Inc. v. Department of Highways*, 413 Pa. 119, 196 A.2d 355, 356 (1964); *Enke v. City of Greeley*, 31 Colo.App. 637, 504 P.2d 1112, 1113 (1972).

9. 6, Powell on Real Property ¶ 896, at 253 (1975). Proof of the date of the deed's execution creates a presumption of the deed's delivery on that date. 6 Powell on Real Property ¶ 898, at 259 (1975). Thus, the deed herein is presumed to have become effective on August 1, 1974.

10. The Sewer Easement provides:
   Wickwire conveys and quitclaims to . . . the City . . . a perpetual easement for a sewage line and appurtenances, including the right to enter upon the real estate herein described, at any time Grantee may see fit for the purpose of constructing, removing, maintaining, reconstructing and repairing the pipe and to convey sewage through said facilities. . .

The trial court's view that "the only plausible construction of the easement grant is that it constituted a retroactive grant" which "thereby released all claims plaintiff may have had for just compensation," does not bind this court. *Day v. A & G Construction Co., Inc.*, 528 P.2d 440, 443 (Alaska 1974).

1974. However, he still is entitled to damages from the time the sewer construction began in July, 1973, until the time the deed was signed in August, 1974.

This case is reversed and remanded for further proceedings.[11]

BOOCHEVER, Chief Justice (dissenting).

I dissent from the portion of the majority opinion which remands the case for a trial on the issue of damages. From the undisputed record before us, it appears to me that any damages are de minimus.

On August 1, 1974, Mr. Wickwire granted a perpetual easement to the City and Borough of Juneau for the sewer line buried within the 20-foot front yard setback portion[1] of his undeveloped property. The agreed compensation was $100.00. Wickwire now seeks damages under inverse condemnation for the use of his property between July 1973 and August 1, 1974.

It is undisputed that the sewer line was inadvertently placed on his property and that no improvements have been placed on the land by Mr. Wickwire. Moreover, Mr. Wickwire did not even know that the easement had been placed upon his property until the City ascertained his ownership and advised him of it in April 1974. He makes no contention that he would have made any use of the property prior to granting the easement. The easement provides that upon completion of any work under the easement which requires disturbing the surface area, the City shall restore the surface as nearly as may be possible to the original

condition. No contention is made that the property was not returned to its prior condition, and there is further no allegation of damage to trees. Since Mr. Wickwire was unaware of the placement of the easement, his request for damages presents some of the same metaphysical problems raised by the question of the sound made when a tree falls in a forest with no one present.

In *Scavenius v. City of Anchorage*, 539 P.2d 1161 (Alaska 1975), we upheld a jury award of $0.00 in compensation for a sewer easement when there had been a failure to object to instructions permitting the jury to enter an award of no compensation. We held that the difference between an award of $0.00 compensation and a nominal sum is de minimus.[2] Considering that the agreed value of the perpetual easement was $100.00, it appears to me that any damages for the use of that easement during the period prior to August 1, 1974 must be nominal.

This case has already resulted in great expenditure of time and effort by counsel and the Court System. Not only were extensive proceedings conducted at trial level, but briefs were filed and full arguments heard before this court. No principle of significance is involved, and it is inconceivable that a substantial sum of money could be awarded. This is of the genre of cases that Dickens must have had in mind when he had Mr. Bumble state, "the law is an ass—an idiot".[3]

I would not remand the case for further proceedings at the trial level. The law should not be burdened with such trifles.

Appellant asserts that he should be permitted to present testimony on the issue of damages. We conclude that he should be permitted to do so even though we agree with our colleague that it appears that the cost of such a proceeding may be greater than any damages that appellant could recover.

---

Just as with any other question of law, the construction of the Sewer Easement is a task for this court.

11. This case comes perilously close to falling within the doctrine of de minimus: Under that principle, consideration of an appeal is not warranted where the amount in controversy is "triflingly small." *Field v. Bower*, 111 Conn. 715, 151 A. 191 (1930). *See also Miller v. Der Wienerschnitzel International, Inc.*, 265 Or. 438, 509 P.2d 1170, 1173 (1973); *Rose v. State*, 19 Cal.2d 713, 123 P.2d 505, 517 (1942); *United Shoe Machinery Corp. v. Gale Shoe Mfg. Co.*, 314 Mass. 142, 49 N.E.2d 913, 915 (1943).

1. Under the Juneau zoning ordinances, buildings may not be placed within 20 feet of the property line. Title 49, Juneau Municipal Code (1976).

2. 539 P.2d at 1165.

3. Charles Dickens, *Oliver Twist*, Chapt. 51.