No. 84-56

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

WALTER S. RIDDOCK,

        Plaintiff and Appellant,

  -vs-

THE CITY OF HELENA,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Dowling Law Firm; Thomas Dowling, Helena, Montana

      For Respondent:

          Jeffrey M. Sherlock, Helena, Montana

---

Submitted on Briefs:  April 19, 1984

Decided:  September 27, 1984

Filed: SEP  1984

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Walter R. Riddock filed a complaint in Lewis and Clark County District Court alleging that the City of Helena had constructed a pipeline across the land of his predecessors in interest without permission or payment of compensation. Riddock, as present owner of the land, seeks compensation for the alleged taking and recovery of the value of the City's use since installation of the pipeline, or, in the alternative, an order requiring the City to remove the pipeline. The District Court granted summary judgment in the City's favor and Riddock appeals. We affirm.

The issues are:

1. May plaintiff maintain an action for inverse condemnation, trespass and injunctive relief against the City for construction of a water pipeline in 1959 across lands then owned by the plaintiff's predecessor in interest?

2. Did the City obtain an easement by prescription for its water pipeline across plaintiff's land?

In 1959 the City of Helena constructed its Missouri River water supply line from a regulating reservoir in the Helena valley to the Missouri River Treatment Plant, also located in the Helena valley. Prior to construction of the pipeline, the City obtained easements from many property owners. However, for reasons undisclosed by the record, the City constructed the line outside the granted easements on several parcels of land, including that now owned by Riddock. Since 1959 the City has operated the water supply line under the land of Riddock and his predecessor and without the permission of either.

When the water supply line was installed in 1959, the City's construction crews staked out the actual location of the pipeline. The pipeline was constructed along the staked

route during daylight hours. The O'Connell Ranch Company was the owner of the land at that time, but is not a party to this action. Riddock became the owner of the land in May, 1978.

Riddock contends that when he purchased the property in May, 1978 he was unaware that the pipeline crossed the land. He states that at the time of the purchase he secured a title insurance policy which did not reveal any encumbrances or easements over the property in favor of the City. Riddock is a land developer and speculator who purchased the land intending to hold it for subdivision and resale.

Riddock filed this action on February 5, 1983 after negotiations with the City ended unsuccessfully. The complaint is in three counts. The first count is for inverse condemnation; the second is for dollar rental value for the City's use of the land over the years; and the third is an alternative request for injunctive relief requiring the City to remove the pipeline at its own expense and restore the land to its original condition.

After filing of interrogatories and responses by both parties, Riddock and the City each moved for summary judgment. On October 18, 1983 the District Court granted the City's motion for summary judgment. In its findings, conclusions and order, the court found that the only person entitled to recover for inverse condemnation is the owner of the land at the time of the taking, which in this case would have been at the time of construction. Because Riddock was not the owner of the land at the time of the taking, the court concluded that he is not entitled to maintain an action in inverse condemnation against the City. The court further concluded that the City had occupied the land in as open, conspicuous and notorious a manner as possible, considering

3

the nature of the use, and had satisfied the other elements necessary to obtain an easement by prescription. The court concluded that the City had obtained an easement by prescription across Riddock's land. The court entered judgment against Riddock and in the City's favor. Riddock appeals.

I

May plaintiff Riddock maintain an action for inverse condemnation, trespass and injunctive relief against the City for construction of a water pipeline in 1959 across lands then owned by the plaintiff's predecessor in interest?

Riddock does not seriously contend that he is entitled to maintain an inverse condemnation action against the City. However, he contends that the City has not obtained a prescriptive easement and that he may therefore obtain an injunction against further use of his land by the City. He contends that there are remaining questions of fact on this issue.

It is undisputed that Riddock was not the owner of the property when the pipeline was constructed in 1959. The owner at that time was the O'Connell Ranch Company, which is not a party to this action. The only person entitled to recover damages for condemnation is the owner of the land at the time of the taking. 3 Nichols On Eminent Domain § 8.5, at 8-97 (3d ed. 1981); Smith v. Northern Pacific Railway Co. (1919), 57 Mont. 14, 24, 186 P. 684, 686. The time of taking in the installation of an underground pipeline is when construction begins. Wickwire v. City & Borough of Juneau (Alaska 1976), 557 P.2d 783, 784.

The rationale supporting the rule that only the owner at the time of the taking may maintain the action is that the right to compensation for a taking is a personal right which

4

does not pass to a successor with the transfer of land, absent some form of assignment of the right itself. Smith, 57 Mont. at 24-26, 186 P. at 687. Riddock does not contend that there was an assignment by O'Connell Ranch Company of any right to damages for inverse condemnation against the City of Helena. The District Court properly concluded that Riddock was not entitled to bring an action against the City for inverse condemnation.

While Riddock does not seriously question this conclusion, he does maintain that he has a right to injunctive relief. We emphasize the correctness of the District Court's conclusion on the inverse condemnation issue because it provides the basis for resolving Riddock's claim for injunctive relief and, as prayed for in the complaint, damages for trespass or recovery of rental value.

The landowner's only remedy for the City's construction of a pipeline on his land without obtaining an easement is an inverse condemnation action for just compensation for the value of the easement on the date of taking. Wickwire, 557 P.2d at 784. In Wickwire, the court held that the plaintiff landowner could not maintain an action for trespass because the trespass necessarily results from the imposition of the easement and the claim for damages for the trespass is properly considered an element of the property owner's damage due to the condemnation. 557 P.2d at 784.

In Brazil v. City of Auburn (Wash. 1980), 610 P.2d 909, the court held that a landowner whose land had been taken for a public roadway could not maintain an action for lost rent and injunctive relief, but that the only right of recovery was an action for inverse condemnation. 610 P.2d at 911-16. This rule allows the public entity to compensate the damaged landowner and keep the property interest taken. To allow the

5

landowner injunctive relief would allow the landowner to defeat the City's power of eminent domain. This Court has previously applied the rule of Wickwire and Brazil. Smith, 57 Mont. at 26, 186 P. at 687.

Because the only remedy available to a landowner under these circumstances is an action for inverse condemnation, and because only the landowner at the time of the taking is entitled to recover damages for the taking, Riddock has no claim against the City of Helena. Indeed, the City's construction of the water supply line did not harm Riddock; it harmed his predecessor, the O'Connell Ranch Company. The Ranch Company elected not to pursue its remedy against the City and when Riddock purchased the property, it was already burdened by the City's pipeline.

We hold that plaintiff Riddock may not maintain an action for inverse condemnation, trespass or injunctive relief against the City for construction of a water pipeline in 1959 across lands then owned by the plaintiff's predecessor in interest. Accordingly, any potential fact issues related to such actions are immaterial.

II

Did the City obtain an easement by prescription for its water pipeline across plaintiff's land?

To establish a prescriptive easement, the owner of the purported dominant tenement must establish open, notorious, exclusive, adverse, continuous and unmolested use of the servient tenement for the full statutory period of 5 years required to acquire title by adverse possession. Garrett v. Jackson (1979), 183 Mont. 505, 508, 600 P.2d 1177, 1179. Further, prescriptive title once established is not divested by transfer of the servient estate. Garrett, 183 Mont. at

6

509, 600 P.2d at 1180; O'Connor v. Brodie (1969), 153 Mont. 129, 139, 454 P.2d 920, 926.

Riddock contends that the City's use of the land for the pipeline was not adverse or under claim of right because the City recognized the landowner's rights when it acquired an easement for the pipeline from the O'Connell Ranch Company. We disagree. The easement obtained by the City recognized the landowner's rights to the land covered by the easement. However, the landowner's grant of an easement over a specific tract of land cannot be construed as creating a permissive right to use an entirely different strip of land.

Riddock contends that because the underground pipeline was not visible to him when he purchased the property nor visible throughout the prescriptive period, that the use was not open and notorious and the City did not obtain a prescriptive easement.

A similar argument was addressed by this Court in O'Connor:

> " . . . defendants [landowners] argue that an underground water line does not have the element of open and visible use; that being underground there is no interference or conflict in use of the surface land. In brief, defendants contend there is no adverse occupancy such as exists where an easement is claimed for a roadway.
>
> "In answer to this contention we might ask in what further adverse manner could plaintiffs occupy defendants' land with an underground water line? As this Court said in State v. Portmann [(1967), 149 Mont. 91, 95, 423 P.2d 56, 58]: 'It is difficult to imagine in what manner land might be "occupied" with respect to an easement unless it be by actual use.'" O'Connor, 153 Mont. at 138, 454 P.2d at 925 (emphasis added).

The City openly and visibly constructed the water supply line across the Ranch Company's land outside the easement granted to the City. The intended location of the pipeline was staked out for all to see. The District Court specifically found that there was nothing more the City could have done

7

under the circumstances to put the landowner on notice of its use. Certainly these circumstances were sufficient to put the landowner on inquiry. As in O'Conner, we find the City's use was sufficiently open and notorious to support the District Court's finding of a prescriptive easement.

Riddock argues, as did the defendants in O'Conner, that adverse occupancy did not exist because the circumstances of adverse use were insufficient to put a prudent man upon inquiry. Riddock contends that he is a prudent man, that he had a title search done which failed to show the existence of the pipeline, that his title insurance policy did not show any easement in favor of the City, and that visual inspection of the property did not indicate the presence of the pipeline.

Riddock errs, however, in applying the prudent man test to himself rather than to his predecessor, against whom the City's prescriptive easement was obviously perfected. This Court's response to the prudent man argument in O'Connor is applicable here:

> "But whether the [landowner] had actual knowledge of the underground water line is immaterial for the reason that plaintiffs had acquired prescriptive title prior to the time [landowners] acquired their property. Prescriptive title once established is not divested by the subsequent transfer of the servient estate. The [landowners'] lack of knowledge, if any, of the underground water line is a matter which must be settled between the [landowners] and their grantor." 153 Mont. at 139, 454 P.2d at 926.

Here the City's prescriptive easement ripened before Riddock acquired title to the land crossed by the City's pipeline. Riddock's lack of knowledge of the pipeline is immaterial to this action. The record contains substantial uncontradicted evidence satisfying the elements necessary to obtain an easement by prescription. We find no error in the District Court's conclusion that the City of Helena obtained an

easement by prescription for its water pipeline across plaintiff's land.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9